### Oliver Standley, et al., v. John A. Moss, et al.

1. WILL—*what does not constitute.* A paper not attested by two witnesses in the presence of the testatrix is not a will.

2. WILL—*who competent as witness to.* A person is a competent witness to testify to the execution of a will where he was a "credible" witness within the meaning of the statute at the time he attested such will.

3. WILL—*who competent as witness to.* A witness to a will is not disqualified merely by reason of the fact that such will appoints him as executor thereof.

4. WILL—*when, will not be set aside for incompetency of attesting witness.* Where a bill filed to contest a will does not aver that the attesting witnesses were incompetent and does not set up facts which amount in substance to such an averment, the will will not be set aside upon such ground.

5. WITNESS—*burden to establish incompetency of.* The burden is upon the party objecting to the competency of a witness to show his incompetency.

6. WITNESS—*when objection to competency of, should be made.* Objection to the competency of a witness should be made at the time he is called as a witness and before he is examined in chief, and when not made at such time objection to his competency is waived.

Proceeding to contest will. Error to the Circuit Court of Morgan County; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

C. C. LE FORGEE and J. O. PRIEST, for plaintiffs in error.

George L. Morrill and J. A. Bellatti, for defendants in error.

Mr. Justice Gest delivered the opinion of the court.

By the bill in this case the plaintiffs in error contested the validity of the will of Anna Mary Blimling. Three grounds are set up in the bill upon which it is claimed that the will probated is not her will: First, that at the time of the execution of the will she was *non compos mentis;* second, that the execution of the will was obtained by undue influence exercised upon her by the defendants; third, that neither of the subscribing witnesses to her will, James C. Fairbank and S. Allen Fairbank, "attested the execution of the said will at the request of the said Anna Mary Blimling, nor in her presence; that said will was not attested by one or either of the said witnesses until after its execution by the said Anna Mary Blimling, and that at a time, and upon an occasion when she, the said Anna Mary Blimling, was not present, and these complainants charge that the said will was executed by the said testatrix in the absence of one of the said subscribing witnesses, and that said instrument was then taken to the city of Jacksonville, her residence, at which place and in the absence of the said Anna Mary Blimling, the said S. Allen Fairbank subscribed his name to said will as a pretended witness to the execution thereof."

During the trial of the cause the complainants struck out from their bill all allegations charging mental incapacity of the testatrix, and offered no proof whatever of undue influence, so that the sole ground of contest was the third above mentioned. The first matter stated in the third ground of contest is that the witnesses did not attest at the request of the testatrix, and the second matter stated is that the witnesses, or one of them, did not attest in the presence of the testatrix. The law does not require a testatrix to make request of persons to attest her will, and consequently does not require proof that such request was made, or that attestation was made in pursuance thereof; but it

does require the attestation by the witnesses to be made in the presence of the testatrix. A paper not attested by two witnesses in the presence of the testatrix is not and cannot be a will. The averment of the bill in that regard is material and is the only one that requires our attention.

Upon the trial of the cause the proponents offered in evidence the will and the certificate of the oaths of the witnesses at the time of the probate of the will in the County Court. The will was attested by the signatures of the witnesses, James C. Fairbank and S. Allen Fairbank, and contained the following provisions: "I hereby appoint and constitute James C. Fairbank of Morgan county and State of Illinois, and in the case of his death, S. Allen Fairbank of Jacksonville, Morgan county, Illinois, to be the executor of this my last will and testament and hereby empower him to sell and convey any real estate I may die seized of, the proceeds of such possible sale to be divided as provided in this will." The contestants objected to the evidence upon the ground that the above quoted provisions showed that the attesting witnesses were named as executors under the will. The court overruled the objection and admitted the evidence offered. Proponents called S. Allen Fairbank as a witness and he was sworn and examined. No objection was made to his being sworn or examined until he was asked as to the soundness or unsoundness of mind of the testatrix on the 22nd day of April, 1890, when contestants objected to "the competency of the witness to testify as to what occurred at that time." The court overruled the objection. This was the only objection made to this witness or his testimony. The burden is upon the party objecting to the competency of a witness to show his incompetency. No attempt was made to do this in this case. It seems to have been assumed as a fact that S. Allen Fairbank, the witness, was the same person who was named in the will as executor in the case of James C. Fairbank's death. Objection to this witness on the ground of his incompetency ought to have been made at the time he was called as a witness and before he was examined in chief.

Greenleaf says upon that subject: "In regard to the time of taking the objection to the competency of a witness, on the ground of interest, it is obvious that, from the preliminary nature of the objection, it ought in general to be taken before the witness is examined in chief. If the party is aware of the existence of the interest, he will not be permitted to examine the witness, and afterwards to object to his incompetency, if he should dislike his testimony. He has his election to admit an interested person to testify against him or not, but in this, as in all other cases, the election must be made as soon as the opportunity to make it is presented, and failing to make it at that time, he is presumed to have waived it forever." Greenleaf on Evidence, vol. 1, sec. 421. Contestants knew the objection to this witness before he was sworn; they knowingly allowed him to be sworn and examined and thereby waived the objection they might have made. They desired him to be called by proponents as a witness so that they might by cross-examination lay ground for their attempt to impeach him; they made their choice not to object to him and were bound by it, and for that reason, if for no other, the objection was properly overruled. But for the purposes of this cause we will also assume that S. Allen Fairbank, the attesting witness, the executor named, and the witness called and examined are one and the same person, and that contestants objected to the said papers offered in evidence, and to the witness being sworn in the cause, and to his testimony, on the ground stated, that he was named in the will as executor.

It appears to be universally held that the word "credible" in this statute means "competent;" and it also appears to be generally if not universally held that the competency of the attesting witnesses is to be determined by the state of facts existing at the time of the execution of the will, the time when the attestation is made; so that the precise question before us is, were the attesting witnesses competent as witnesses at the time of their attestation? Contestants claim they were incompetent from the mere fact

that the will as above quoted names them as executors. Counsel do not particularize; they do not point out to us any ground recognized at common law or established by statute from which the conclusion follows that the witnesses are incompetent, and we are referred to no authority that an attesting witness is rendered incompetent merely by reason of the fact that the will he attests appoints him executor. The precise question presented in this case has not been adjudicated by the Supreme Court of this state so far as we are advised. The only possible reason that occurs to us for holding these attesting witnesses incompetent is the common law ground that they are interested parties; interested in proving the validity of the will so that thereby they may become executors thereof, and as such executors, obtain some fees or compensation for their services in executing the will. There is no provision in the will by device or legacy for the benefit of either of them, and if there were they would not become incompetent for the reason that the eighth section of the Statute of Wills nullifies such bequests and legacies and preserves the competency of the witnesses.

There is no device or legacy to the wife of either of them so as to bring them within the rule in Sloan v. Sloan, 184 Ill. 579. They are not interested in the provisions of the will nor in any item of testatrix's property, presently nor prospectively, directly nor by relation. Their sole interest must be in the sum which the County Court, in its discretion, may see fit to award them for their services as executors. Under the old English law executors got no compensation whatever. The position was one simply of confidence, trust and uncompensated burden, not of profit. Under the law of this state it is not considered a position of profit; it is not intended as such. The intent of the law is merely to preserve the executor from loss. The position is one not to be sought for money but to be taken for friendship's sake or merely for the love which one man bears for another even though he be a stranger. The spirit of the relation is the spirit of our equity jurisprudence and

that is the nearest approach to divine law that the world knows of. The compensation allowed executors and administrators is a sum not to exceed six per centum on the amount of personal estate and not to exceed three per centum on sales of real estate, and is to be determined by the court; it is uncertain as to the amount. If an executor be by profession a lawyer and render legal service about the discharge of his trust he can be allowed nothing therefor, upon the principle that he cannot profit by his trust. Prohibition of profit lies at the basis of our law of trusts. The discharge of such official duty rests not upon profit, not upon motives of pecuniary interest, but upon the high ground of respect for the dead and duty to the bereaved living whose interests have been confided to his care. Relative to the question of interest which disqualifies a witness, a distinguished writer on the law of evidence whose work is everywhere quoted by the courts says: "The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest and not an interest uncertain, remote or contingent. Thus the heir apparent to an estate is a competent witness in support of the claim of his ancestor; though one who has a vested interest in remainder is not competent. And if the interest is of a doubtful nature, the objection goes to the credit of the witness and not to his competency. For, being always presumed to be competent, the burden of proof is on the objecting party, to sustain his exception to the competency; and if he fails satisfactorily to establish it, the witness is to be sworn." Greenleaf on Evidence, vol. 1, sec. 390.

In Chicago City Ry. Co. v. Mager, 185 Ill. 337, the Supreme Court quote that writer on this subject: "Mr. Greenleaf, in his work on Evidence (vol. 1, sec. 386) defines an interest in the result of a suit to be 'some legal, certain and immediate interest, however minute, either in the event of the cause itself, or in the record, as an instrument

of evidence, in support of his own claims, in a subsequent action. It must be a legal interest, as distinguished from the prejudice or bias resulting from friendship or hatred, or from consanguinity, or any other domestic or social or any official relation, or any other motives by which men are generally influenced, for these go only to the credibility.' "

If it can be said that these witnesses are disqualified by reason of their prospective compensation as executors, why can it not more forcibly be said that they are disqualified because of the compensation which they will receive for attending the court to testify as witnesses upon the probate of the will? Each of them would be entitled by law to receive one dollar per day and mileage for so doing. That is a fixed, certain, definite sum. This will was executed April 22, 1890. It was presented for probate; one witness was dead and one attended the court. If the probate of the will was denied he got no compensation from any source; if the probate was allowed he got his per diem and mileage and out of the assets of the estate of the testatrix, the same assets from which his compensation as executor would come. It would seem that his pecuniary interest was for the probate of the will and although the sum is small the author we have quoted and all other authors on that subject say that the amount of interest, however large or however minute, is immaterial. To hold that such an interest disqualified would, of course, as the statute now stands, render it impossible to prove any will. The greater weight of authority supports the proposition that the attesting witness is not disqualified by the mere fact that the will appoints him executor, not making him residuary legatee or granting to him an interest other than fees or compensation. In Massachusetts the doctrine was established at an early day: " It seems that by the common law an executor who is not a residuary legatee and has no beneficial interest in the estate may be a witness to prove the execution of the will and the sanity of the testator, being considered a mere trustee and nominal party having no real interest in the contest." Sears v. Dillingham, 12

Mass. 358, which was cited and approved in Wyman v. Symmes, 10 Allen 153. To the same effect are Redfield on Wills, p. 258; Jarman on Wills, vol. 1, p. 225; Underhill, Law of Wills, vol. 1, p. 282, and many authorities cited by each author. Some confusion has arisen by making no distinction between proof of a will in the County Court and proof of a will contested by bill in chancery. In the latter case the executor is a necessary party defendant and has been held incompetent to testify in favor of proponents in such case, because if the judgment be against the validity of the will he may be adjudged to pay the costs of that suit; but in such case, as has been determined by our Supreme Court, his competency is restored by his resignation as executor. That is what was done in this case. The executor, S. Allen Fairbank, resigned, and Levi S. Doan was appointed administrator with the will annexed; the bill was dismissed as to S. A. Fairbank and the cause proceeded with Doan as a party in lieu of Fairbank. Thereby the competency of Fairbank to testify in the cause was restored. Our conclusion is that he was a competent witness upon the probate of the will in the County Court, and also upon the trial of this cause. Upon the trial of this cause S. Allen Fairbank testified that the will was signed by the testatrix in his store in Jacksonville, Morgan county, on April 22, 1890, and that at the same time and place it was signed by himself and his father, James C. Fairbank, as attesting witnesses, in the presence of the testatrix and at her request, and that she was then of sound mind; the witness further said that Miss Mary E. Noyes was there present at that time. On cross-examination he was asked if in a conversation had with the complainant, Oliver Standley, and one Felix McAvoy, at a certain place in November, 1901, in answer to a question put to him he did not say, " She (Mrs. Blimling) took the copy over to father at home and he drew it up for her; she signed it in his presence and then he signed it and then somebody brought it to my store here in Jacksonville and I signed as a witness because I knew her signature." The witness denied

that he said any such thing in form or in substance.   The
contestants produced Standley and McAvoy who testified
that he did so state.   The proponents called Miss Mary E.
Noyes who testified that at the time of the execution of
the will she was present in the store of S. A. Fairbank and
saw the will signed there by the testatrix and by James C.
and S. A. Fairbank as witnesses.   By the cross-examination
of Miss Noyes and S. A. Fairbank contestants attempted to
show that the body of the will and the name S. Allen
Fairbank, were in different colored ink from the names
James C. Fairbank, Anna Mary Blimling and the date fig-
ures, 22, but it was also shown in the cross-examination
that there were two bottles of ink on the desk; that differ-
ent kinds of ink were used in the store; that James C.
Fairbank had and generally used a fountain pen and that he
then wrote in the figures, 22.   It does not appear with
what pen or ink Mrs. Blimling signed her name.   It does
appear that James C. Fairbank wrote the body of the will,
that it was not written at the store and that Mrs. Blimling
brought it with her at the time when it was executed.
There was no evidence introduced by contestants except
the above-mentioned testimony of the complainant, Oliver
Standley, and of Felix McAvoy.   The object of their testi-
mony was to impeach the witness, S. A. Fairbank, upon this
trial; not at the time of the execution of the will nor at the
time of its probate in the County Court.   In a case almost
precisely like this in this particular our Supreme Court
said : " It cannot be contended that if, in a chancery pro-
ceeding to set aside a will, one of the subscribing witnesses
is impeached, the impeachment extends back to the date of
the execution of the will, so as to make it a will with only
one subscribing witness, instead of two.   To establish such
a rule as this would be to open the door to fraud and cor-
ruption.   It would place it in the power of a subscribing
witness, long after the will was admitted to probate, to re-
tract and undo what has already been established by the
testimony of such witness."   And in the same case quoting
from a Michigan opinion :  " But we know of no rule of

law which makes the probate of a will depend upon the recollection of even ˙h᾿ veracity of a subscribing witness." Johnson v. Johnson, 187 Ill. 95. And in the same case (on page 94) it is said : " If it were true that this alleged contradiction of the evidence of Mrs. Derring weakened or destroyed the effect of her testimony as given upon the trial of this proceeding, there were yet remaining the will and the certificate of the testimony of the subscribing witnesses at the original probate of the will in the County Court and the testimony of the other subscribing witness, Orie Wood, sustaining the validity of the will. Even, therefore, if the testimony of Minnie Derring was thrown out, sufficient evidence was introduced by the defendants in error, outside of her testimony, to make a *prima facie* case in favor of the validity of the will under the authorities above quoted." And so in this case rejecting the testimony of S. A. Fairbank there remains the will, the certificate of the oaths of the subscribing witnesses at the original probate and also the uncontradicted and the unimpeached testimony of the witness Miss Noyes, not as an attesting witness but as proving that S. A. Fairbank and James C. Fairbank were such. What we have just above said disposes of the second point made by contestants, to wit : that the court erred in instructing the jury to find for the proponents. The contestants dismissed the charge of mental incapacity; they introduced no proof of undue influence; the will was signed by the testatrix and attested by two witnesses and we have found the witnesses to have been competent. The proponents made a clear *prima facie* case and there was nothing to the contrary. The direction of the trial court to find for the proponents was correct.

There is another reason why this decree should not be disturbed. It is a fundamental rule of pleading and practice that the *allegata* and the *probata* must agree: that the complainant cannot allege one ground of complaint and recover on another not alleged.

There is no averment in this bill that the attesting witnesses were incompetent nor are facts averred amounting in

substance to such an averment. Incompetency of the attesting witnesses is not by the bill made a substantive charge and ground of contest. The contestants allege that the subscribing witnesses did not attest in the presence of the testatrix and seek to recover on the ground that they were incompetent witnesses. Under the pleadings the competency of the witnesses stood admitted. The following cases are decisive of this question: Purdy v. Hall, 134 Ill. 298; Flinn v. Owen, 58 Ill. 111.

We find no error in this record and the decree is affirmed. .

*Affirmed.*