WILLIAM M. LLOYD & COMPANY v. MARY E. POYTHRESS,
ADMINISTRATRIX.

(Filed 28 March, 1923.)

**Vendor and Purchaser—Account—Affidavit—Prima Facie Case—Evidence —Witnesses—Deceased Persons—Transactions—Statutes.**

In an action by a corporation against the administratrix of the deceased to recover for goods sold and delivered to the intestate prior to his death, upon an affidavit attached to an account stated under the provisions of C. S., 1789, making such evidence prima facie evidence of the correctness of the account in an action thereon, it is required where objection is raised that the one making the affidavit be qualified as witness to make the state-

ment; and when he has made the affidavit as treasurer of the corporation it must be made to appear upon the face of the affidavit itself, or by evidence *aliunde*, that he was not disqualified for interest under the provisions of C. S., 1795, prohibiting testimony of transactions, etc., with a deceased person.

ADAMS, J., concurs in result; WALKER, J., dissents; CLARK, C. J., concurs in the dissenting opinion.

APPEAL by defendant from *Horton, J.,* at October Term, 1922, of VANCE.

Civil action, instituted by William M. Lloyd & Company, a corporation chartered under the laws of the State of Pennsylvania and doing business in North Carolina, to recover upon an open account for five carloads of lumber alleged to have been sold, shipped, and delivered, during the month of March, 1918, by and through plaintiff's office located at Charlotte, N. C., to defendant's intestate, J. S. Poythress, at Henderson, N. C. The only evidence offered on the hearing, and which was admitted over defendant's objection, was an itemized statement of the account, supported by the following affidavit:

Edward A. J. Evans, being duly sworn, says that he is treasurer of William M. Lloyd Company, a corporation duly created and organized under the laws of the State of Pennsylvania, and at the times stated in the annexed and foregoing account was doing business at Charlotte, in the State of North Carolina; that he is familiar with the books of account and business transaction of said corporation, and that the attached and foregoing account against J. S. Poythress of Henderson, North Carolina, is just and correct within the knowledge of this affiant, and the items therein charged and comprising said account were sold and delivered to the said J. S. Poythress at the prices and dates therein charged, at his special instance and request; that credit has been duly given and extend thereon for all payments and just and lawful offsets to which the account is entitled, and there remains justly due and unpaid thereon a balance of $526.71, with interest thereon from 1 April, A. D. 1918, for which payment has been demanded.

                    (Signed)   EDWARD A. J. EVANS.   [SEAL.]

Sworn and subscribed before me at Charlotte, State of North Carolina, this 28 September, A. D. 1922, as witness my hand and seal of office.
                              (Signed)   HENRY GROSS,
My commission expires 18 January, 1925.          *Notary Public.*

From a verdict and judgment in favor of plaintiff, the defendant appealed, assigning errors.

*Thomas M. Pittman for plaintiff.*
*J. H. Bridgers for defendant.*

STACY, J.   Defendant objected to the introduction of the account and affidavit chiefly upon the ground that the affiant, being treasurer of the plaintiff corporation was disqualified to testify to the matters stated in the affidavit under C. S., 1795.   In an action brought by a corporation against the executor or administrator of a deceased person, it has been held with us that an officer and stockholder of the plaintiff corporation is debarred from giving evidence of personal transactions or communications with the deceased, under the provisions of our statute disqualifying parties and persons interested in the event from being examined as witnesses in their own behalf.   *Banking Co. v. Walker,* 121 N. C., 115. And this is in accord with the great weight of authority in other jurisdictions.   28 R. C. L., 508.   See, also, note 9, Ann. Cas., p. 183, which contains a valuable collection of the authorities on the subject.   At common law, a stockholder, being interested in the event of the litigation, was not allowed to testify generally in favor of the corporation.   *C. H. Albers Commission Co. v. Sessel,* 87 Ill. App., 378, affirmed 193 Ill., 153; 61 N. E., 1075.

The defendant contends that under our statutes a treasurer of a business corporation is presumably a stockholder, and therefore interested in the result of an action to which the corporation is a party.   C. S., 1144, provides that the directors of every corporation issuing stock shall be, at all times, bona fide stockholders of said corporation.   C. S., 1145, provides that every corporation shall have a president, secretary, and treasurer, to be chosen either by the directors or by the stockholders as the by-laws may direct.   It is further provided that the president shall be chosen from among the directors.   From this it follows that the president must necessarily be a stockholder.   This latter section also provides: "Any two of these offices may be held by the same person, if the body electing so determine."   If any two of these offices may be held by the same person, it is the defendant's contention that presumably each officer possesses the necessary qualifications to fill any two of said offices.   A treasurer or a secretary could not be elected to the office of president unless he be a stockholder.   Hence, a treasurer, who is not a stockholder, could not hold the two offices of president and treasurer of the corporation.   Defendant says "any two" means an indeterminate number of combinations that may be made from all, with none excluded. If a treasurer be not a stockholder, he would not be qualified to hold the office of president, and while he might be elected secretary and treasurer, yet he would not be qualified to hold any two of said offices.   For the same person to be able to hold any two of these offices at one and the same time apparently requires that each officer shall be qualified to hold any one or more of said offices.   It is conceded by the defendant that this does not follow as an absolute necessity—only as a presumption or as a

reasonable inference is her contention—for the statute may be construed to mean that the offices of president and secretary, or the offices of president and treasurer, may be held by the same person if the electing body so direct, provided he be a stockholder, while the office of secretary, or the office of treasurer, or the offices of secretary and treasurer may be held by one other than a stockholder. In electing a secretary, or a treasurer, the directors or the stockholders need not then be concerned with the qualifications of a president, but if they later wish to combine the offices of president and secretary, or the offices of president and treasurer, the same person then occupying the office of secretary, or the office of treasurer, could not be given the additional office of president unless he be a stockholder. It is the contention of the defendant that the treasurer or the secretary of a corporation, in order to be able to hold any two of the offices mentioned in the statute, should be qualified to hold the office of president. To do this, he must be a stockholder. Hence, the defendant concludes that, under our decisions, such an officer is presumably interested in the event of the action. Without deciding or expressing any opinion as to the merits of this contention, which is recited to show the basis of defendant's argument, we pass to the defendant's next position which we are constrained to believe should be resolved in her favor.

It was held in *Nall v. Kelly,* 169 N. C., 717, that an affiant who verifies an account which is to be received on the hearing and taken as prima facie evidence of its correctness under the provisions of C. S., 1789, must be regarded and dealt with as a witness *pro tanto,* and, to such an extent said affiant is subject to the qualifications and restrictions of other witnesses. If the person who makes the affidavit be not qualified as a witness to testify to the matters and things contained therein, in such case the account and affidavit, in the form as offered, should not be received in evidence.

The statute permits an *ex parte* affidavit to be offered as prima facie evidence of the correctness of the account, but we do not think it was the intention of the Legislature to permit one to speak by affidavit who otherwise would be incompetent to testify. Nor do we think it was the purpose of the Legislature to deprive the adverse party of his right to question the admissibility of such evidence. When the competency of a witness, or the admissibility of evidence, is in question, ordinarily the party opposing is entitled, as a matter of right, to a preliminary cross-examination of the witness whose competency is challenged or the admissibility of whose testimony is in dispute. *Woodworth et al. v. Brooklyn Elevated Railroad Co.,* 48 N. Y. S., 80; *Trussell v. Scarlett,* 18 Fed., 214, and note; Abb. Tr. Brief, pp. 126 and 245. Here the defendant is deprived of this privilege; no notice is given as to whose affidavit will be

offered and no opportunity is afforded the defendant for investigation. But it is said that the burden is on the party objecting to the competency of a witness, or to the admissibility of his testimony, to show his incompetency or the inadmissibility of his evidence. This is so, as a general rule, where the validity of the objection is not apparent (*Standley v. Moss,* 114 Ill. App., 612; 1 Greenleaf on Evidence, p. 435, sec. 390); but the basis of the present objection, to wit, the affiant's alleged interest in the event of the action, is a matter peculiarly within the knowledge of the plaintiff, and the defendant has had no opportunity to cross-examine the witness or to offer evidence of his incompetency or the inadmissibility of his affidavit. Indeed, it would be well-nigh impossible for the defendant to obtain such information except from the plaintiff or its witnesses; and it is a rule of practically universal acceptance that where a particular fact, necessary to be proved, rests peculiarly within the knowledge of a party, upon him the law casts the burden of proving such fact. *Hosiery Co. v. Express Co.,* 184 N. C., 478.

We have held that C. S., 1789, appearing as a section on the law of evidence, should be construed in subordination to C. S., 1795, under the principle announced in *Cecil v. High Point,* 165 N. C., 431, and other similar decisions; and in cases presenting the question, however meritorious a particular demand may be, when it involves a personal transaction or communication with a deceased person, the account must be established by proper evidence; and under the statute, as now drawn, an *ex parte* affidavit of the living should not be admitted over objection, unless it appear upon the face of the affidavit itself, or by evidence *aliunde,* that the person making the affidavit is not debarred from doing so by the provisions of C. S., 1795. *Nall v. Kelly,* 169 N. C., 717. Viewing the case in its larger aspect, we think this position is in keeping with a wise public policy and the intent of the Legislature as expressed in the two statutes now under consideration. The defendant's objection to the proof of account as offered should have been sustained.

We will not go farther and allow the defendant's motion for judgment as of nonsuit, at the present time; because, upon another hearing, the plaintiff may be able to make good all the allegations of its complaint. But for the error, as indicated, a new trial must be awarded, and it is so ordered.

New trial.

ADAMS, J., concurs in result *only.*

WALKER, J., dissenting: Being unable to concur in the opinion of the Court in this case, I will state briefly the reasons and grounds of my dissent. It does not appear *in this case* that A. J. Evans, who made the

affidavit as to the correctness of the account upon which the suit was brought, had any interest therein, or could in the least be affected by the result of the action. He is not within the terms or intent of the statute disqualifying persons as witnesses from testifying against the estate of deceased parties, that is, against executors or administrators of such parties, as to personal transactions or communications with them. So far as appears, Evans will not lose or gain anything however the action may terminate. He is but treasurer of the company bringing this action, and I know of no legal principle by which if the plaintiff prevails and gets a judgment he will be entitled to any part of the recovery, or how, if the plaintiff is cast in the suit, he will lose anything. He would certainly not be liable as treasurer, or otherwise, even for any part of the cost.

The case cited by the Court in its opinion (*Banking Co. v. Walker,* 121 N. C., 115) does not begin to sustain the contrary view of The Code, sec. 590. In that case *Justice Montgomery,* who delivered the opinion of the Court, is careful to state and to repeat that the witness, who was the cashier of the plaintiff bank, and whose testimony was excluded because of his interest in the event of the action, was not only cashier of the plaintiff bank, *but a stockholder,* and it is perfectly apparent that the ruling of the Court excluding his testimony was based on the latter fact alone. So that *Banking Co. v. Walker, supra,* so much relied on by the Court to support its position, wholly fails to do so.

The reasoning by which the Court comes to the conclusion that because the president of a corporation is required to be a stockholder, and that any two offices of the corporation may be held by the same person, it follows that a treasurer may be a stockholder, and this being so, it follows that the presumption must be that he is one, but this is a complete *non sequitur.* Such assertion does not logically or legally lead to the conclusion reached by the Court. The president must be a stockholder in order to hold that office, but this does not mean, or *begin to prove,* that if the company consolidates two offices, president and treasurer, the latter must also be a stockholder, because there is no restriction on the company to associate a nonstockholding officer with one who owns no stock, and is not required to own any. It seems to be conceded, or, at least, should be, that the officer making the affidavit of the correctness of the account must be a stockholder in order to be interested in the event within the meaning of the statute. The mere fact that he is an officer does not in any sense make him interested in the event of the action, for no judgment can be entered for him or against him that will in the least affect his personal interests, but that is not enough. He may have a sort of sentimental interest, if that; but that is not enough, and that is certainly all that he can have. And, again, I am compelled to

say that the argument by which the Court reaches the conclusion that this power to unite two offices disqualifies the treasurer, who has no stock, when joined with the president, is also a complete *non sequitur,* and surely the conclusion cannot be warranted on the ground assumed. I have referred above to the *conclusion* of the Court in this branch of the case as being a *non sequitur,* and it is rightly so denominated, when this part of the opinion is considered with what immediately follows, because the last part and the conclusion are inseparably connected with the first part, and, in fact, are unmistakably based upon it, but neither can stand without the help and assistance of the other.

The last proposition is clearly untenable. The Court says: "The statute permits an *ex parte* affidavit to be offered as prima facie evidence of the correctness of the account, but we do not think it was the intention of the Legislature to permit one to speak by affidavit who otherwise would be incompetent to testify. Nor do we think it was the purpose of the Legislature to deprive the adverse party of his right to question the admissibility of such evidence." In this connection we may safely concede the correctness of the proposition stated there, that the Legislature did not intend to permit one to speak by affidavit who is incompetent to testify, nor to withdraw the right of the adverse party to make proper objection to the admission of incompetent evidence. But one of the conclusive answers is that the Legislature has done no such thing. The defendant has the right and the opportunity, by proper procedure, to make due objection to any incompetent testimony. But that does not mean that he has the right, or should have it, to place the burden on the party who offers testimony to show primarily that it is competent, for this would violate every rule of evidence we have ever heard of, as testimony offered, at least such as is apparently competent, must be admitted unless proper objection is made to it and supported by the facts, which every rule as to the burden of proof requires should rest upon the objector, he who is the actor and affirms and not he who refutes, denies, or is silent, and occupies merely a defensive position. If it be true that the objector is entitled to demand the presence of the witness so that he may conduct a preliminary inquiry and cross-examine him, as to his competency, it is perfectly clear that the statute would be practically nullified, or come to naught, as that was what the law was intended to avoid. The extreme position taken by the Court in this respect would require all persons having knowledge of the facts, or likely to have such knowledge, to be present when the affidavit is offered, that they be examined as to its admissibility. This would, of course, be in violation of the spirit and purpose of the statute, and entirely destroy the benefits intended to be conferred by it, besides, ignoring every known rule of

evidence upon the subject. It would, besides, require the party offering the evidence to do precisely what the statute was intended to prevent.

The principle of *Hosiery Co. v. Express Co.,* 184 N. C., 478, may be easily conceded, and yet the argument and conclusion drawn from that principle is this, that when a particular fact, necessary to be proved, lies peculiarly within the knowledge of one of the parties to the controversy, upon him is cast the burden of proving such fact. But I do not believe it will be asserted, at least not successfully so, nor that we have ever been taught, that where one party offers evidence, he must go further and show that his evidence is competent before it will be heard. That is going entirely too far, and has no authority to support it.

But the statute simply requires that an affidavit, such as was made in this case, shall be sufficient, without anything else, to constitute a prima facie case, and when we require more to be done, we are simply legislating and not construing the statute, or declaring what the law is. If the law is wrong or unjust, or inadequate to protect rights, let the Legislature correct by amendment, and not we by forced construction or arbitrary doctrine, having no legitimate reason to justify it. I do not contend, of course, that incompetent testimony should be admitted, and there is a sufficient remedy for its exclusion if it is offered. If defendant had objected and alleged that the evidence proposed to be introduced was incompetent as a transaction by an interested witness with a deceased party, and also alleged that he was not able to show it for lack of time and opportunity to do so, no court would deny his (or her) request for reasonable time and opportunity to make the objection good, and, if it did, I may safely assert that this Court would not sustain any such ruling. But to sustain the objection in its present form would be simply to refuse enforcement of the law as written (*ita lex scripta est*), and the mandate of the Legislature, which would be wrong and an invasion of the legitimate function of the legislative department. Whether the law is just or not, or needs amendment or reformation, is not our concern, and, to speak plainly of it and in common parlance, "is none of our business." We can only inquire what the law is, and not what it should be, and it is our imperative duty to enforce it as we find it.

As has been well said: "It may safely be laid down that the less the process of inquiry is fettered by rules and restraints, founded on supposed considerations of policy and convenience, the more certain and efficacious will it be in its operation. Formerly the very means devised for the discovery of truth and advancement of justice were not infrequently perverted to the purposes of injustice, and made the instruments of the most grievous and cruel oppression. It is to be hoped not only that those imperfections which still subsist, which have been spared from their antiquity, and exist as a kind of prescriptive evil, will in time be

removed by legislative, if they be beyond the reach and scope of judicial, authority. 'The rules of evidence,' said *Lord Ellenborough,* in *Pritt v. Fairclough* (3 Campb., 305), 'must expand according to the exigencies of society.' The admission of every light which reason and experience can supply for the discovery of truth, and the rejection of that only which serves not to guide, but to bewilder and mislead, is the great principle that ought to be the foundation of every system of evidence. Common experience rather than technical rules should be adopted as the test. Mercantile and industrial life, producing, as they do, nearly all the transactions of men that come before the courts of law and equity, are essentially practical. That which is the final basis of action, of calculation, reliance, investment, and general confidence in every business enterprise, may safely, in general, be resorted to to prove the main fact. The courts need not discredit what the common experience of mankind relies upon. *Judge Cooley* once said that 'courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon.' Lastly, wherever there is any serious doubt in the law as to whether certain proof is or is not permissible, a safe rule to pursue is to permit the testimony to go to the jury." 10 R. C. L., pp. 861-862. It has also been said that "in assailing a prima facie right, the party must aver and prove facts sufficient to overcome it; otherwise, he cannot ordinarily put the defendant to the proof of a perfect indefeasible title or right. And it makes no difference as to the point of burden of proof that the evidence to rebut the demandant's prima facie right comes in part or wholly from the defendant's witnesses on cross-examination." 10 R. C. L., p. 899, sec. 48; *Foster v. Hall,* 12 Pick. (Mass.), 89 (22 Am. Dec., 400); *Hardman v. Cabot,* 60 W. Va., 664; 9 Ann. Cases, 1030; 7 L. R. Anno. (N. S.), 506.

The cases cited by the Court (*Cecil v. High Point,* 165 N. C., 431, and *Nall v. Kelly,* 169 N. C., 717) have, I must most respectfully say, no bearing upon or relevancy to the points in this case. It is a very "far cry" from them to this case, or from this case to them. They are all altogether different, and no legitimate deduction, or inference, can be drawn from them that would in any aspect support the contention as stated in the Court's opinion. The statute, and its meaning, are so plain and simple that he who runs may read and know what the law is, as enacted by the Legislature. Our duty is also simple, and demands faithful obedience to its plain mandate. It was passed so as to abolish what was deemed to be a great injustice imposed upon a creditor in collecting his just debt, when he was required, at undue cost and expense, to establish his case before a justice or court. It makes the affidavit only prima facie evidence, and requires more proof when it is seriously con-

tested, unless the plaintiff is willing to take the risk of losing his case. To adopt the rule and procedure I have suggested would fully protect the debtor and work no injustice to the creditor, and I believe that it should be declared as the law and the rule of decision in this case.

For the reasons given by me, I dissent from the opinion and judgment of this Court.

CLARK, C. J., concurs in the foregoing dissenting opinion of WALKER, J.